**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARCIE RISK, and TIMOTHY RISK,** **Plaintiffs,** | **CIVIL ACTION** |
| **v.** | |
| **LM GENERAL INSURANCE COMPANY,** **Defendant.** | **NO. 23-41** |

# MEMORANDUM

**HODGE, J.** **March 14, 2024**

## I. INTRODUCTION

Marcie and Timothy Risk ("Plaintiffs" or "the Risks") brought this lawsuit asserting claims of insurance bad faith (Count I), breach of contract (Count II), loss of consortium (Count III), and violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count IV) against LM General Insurance Company ("Defendant" or "LM") for denying their underinsured motorist ("UIM") claim without conducting an investigation into the basis for the claim or providing a rationale for its denial. (ECF No. 1-3.) The Risks sued LM in the Philadelphia County Court of Common Pleas on December 2, 2022, and LM removed the case to federal court on January 5, 2023. (ECF No. 1.)

This case is presently before the Court on LM's Motion to Dismiss Counts I and IV of the Complaint, and to Strike Allegations of Bad Faith, Statutory Violations, and Demands for Extra-Contractual Damages from Counts II and III of the Complaint (ECF No. 13) ("MTD"); and on Plaintiffs' Motion to Compel Depositions of Danielle Helfer and a Corporate Designee (ECF No. 16) ("MTC"). For the reasons discussed herein, the Court will grant in part and deny in part

Defendant's MTD. The Court will dismiss Plaintiff's MTC as Moot without prejudice and with the right to refile, taking into consideration the Court's decision on the MTD.

## II. FACTUAL BACKGROUND[1]

This case arises from Defendant's administration of the Risks' UIM claim arising from a motor vehicle accident on May 6, 2019, in which Ms. Risk's vehicle was rearended while stopped for traffic on Lancaster Avenue in Montgomery County, Pennsylvania. (ECF No. 1-3 at ¶¶ 6-7.) Ms. Risk's vehicle was struck at a high rate of speed by another vehicle owned and operated by a third-party, John Maisey ("tortfeasor"). (*Id.* at ¶¶ 7-8.) The tortfeasor was thereafter charged by police for failure to maintain safe speed and distance. (*Id.* at ¶ 9.) As a result of the accident, Ms. Risk allegedly sustained "serious, disabling and permanent personal injuries." (*Id.* at ¶ 11) (detailing diagnoses and treatment.) Ms. Risk resolved her claims with the tortfeasor for $92,000 of the tortfeasor's $100,000 third-party liability limit, with permission from Defendant LM. (*Id.* at ¶ 10.)

At all relevant times, Ms. Risk was insured under an insurance policy (the "Policy") provided by LM, policy number AOS-288-501225-4093. (*Id.* at ¶ 25.) The Policy provided UIM coverage with full tort coverage up to $250,000. (*Id.* at¶ 25-28.) The Complaint alleges that on April 13, 2022, Plaintiffs' Counsel sent correspondence to Danielle Helfer, a Senior Claim Resolution Specialist for Defendant LM, providing a detailed explanation of Ms. Risk's extensive injuries and subsequent medical treatment, and requesting LM tender the policy limits of $250,000 in UIM benefits. (*Id.* at ¶ 14.) Along with the correspondence, Plaintiffs provided fourteen separate sets of voluminous medical records along with other documents supporting her claim. *(Id.)* According to the Complaint, on July 12, 2022, Ms. Helfer contacted Plaintiffs' Counsel and

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

requested a telephone call to discuss the UIM claim. (*Id.* at ¶18.) On July 15, 2022, Plaintiffs' Counsel spoke with Ms. Helfer via telephone, at which time Ms. Helfer allegedly notified Plaintiffs that LM believed Ms. Risk had been fully compensated for her damages through her recovery in the case with the third-party tortfeasor. (*Id.* at ¶ 19.) The Risks allege that in a July 21, 2022 letter to Plaintiffs' counsel from the Defendant, Ms. Helfer failed to provide an explanation or rationale for LM's decision to deny the claim. (*Id.*at ¶ 20.)

On August 10, 2023, the Risks sent another letter to Ms. Helfer notifying her that she had failed to provide a basis for her denial and that she had failed to conduct an independent medical examination or interview of Ms. Risk under oath. (*Id*. at ¶ 21.) Plaintiffs also renewed their request that LM tender the UIM policy limit of $250,000 for the UIM claim and notified LM that they would sue for bad faith under the UTPCPL §§201-1 - 201-9.2 and the Pennsylvania Unfair Insurance Practices Act 40 P.S. § 1171.1 et seq. and 73 P.S. § 201-1, et. seq. if LM failed to tender the policy limits for Ms. Risk's claim. (*Id.*) On August 23, 2022, Ms. Helfer sent correspondence to Plaintiffs stating that she had reviewed all medical records and felt that Ms. Risk had been fully compensated by the underlying policy limits of $100,000 and asking Ms. Risk for any additional medical records. (*Id.* at ¶ 22.) On September 12, 2022, Plaintiffs' Counsel sent Ms. Helfer a cost report from a medical expert, estimating Ms. Risk would pay $285,111 in future medical costs arising from the accident. (*Id.* ¶ 23.) The Risks maintain that at no point did Ms. Helfer on behalf of LM provide an offer to settle Ms. Risk's claim for UIM benefits. (*Id.*) The Risks then filed the instant lawsuit alleging that as a result of the car accident, they are entitled to the UIM benefits under the Policy as well as additional damages. (ECF No. 1-3.) In support of their bad faith claim (Count I), the Risks allege that LM "failed to objectively and reasonably evaluate the plaintiff's claims" by providing no basis for its decision to deny her claim moreover without any settlement

offer, and by failing to request an independent medical examination ("IME") or take Ms. Risk's statement under oath before reaching its decision. (*Id.* at ¶ 38.) Plaintiffs further allege that Defendant systematically deprives its insureds of benefits and unreasonably delays the payment of full benefits to further its financial gains and interests. (*Id.* at ¶ 32.) In support of the UTPCL claim (Count IV), the Plaintiffs allege that LM falsely advertised their insurance benefits, and that they relied on those advertisements when purchasing an insurance policy from Defendant. (*Id.* ¶¶ 56-59.)

## III. LEGAL STANDARD

### A. MOTION TO DISMISS

Defendant LM moves for dismissal under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008). Rather, the plaintiff must allege facts necessary to make out each element. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), the Court first separates the factual and legal elements of a claim, accepting the well-plead facts as true and disregarding legal conclusions. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210-11 (3d Cir. 2009). Then, the Court determines whether the alleged facts make out a "'plausible claim for relief.'" *Id*. (quoting *Iqbal*,

556 U.S. at 679). All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d. Cir. 2009).

## IV. DISCUSSION

Defendant LM seeks dismissal of Count I (bad faith) and Count IV (UTPCPL) of the Complaint and asks the Court to strike certain allegations incorporated into Count II (breach of contract) and Count III (loss of consortium). LM argues that the Risks' Complaint asserts conclusory allegations in support of the bad faith claim. (ECF No. 13 at 2.) LM further argues that any allegations regarding the mishandling of the claim in support of the UTPCPL cause of action must fail because the UTPCPL does not apply to insurance claims handling. (*Id.* at 3.) Lastly, LM argues that under Federal Rule of Civil Procedure 12(f) paragraphs 20-47, 49 and 50 of the Complaint should be stricken from Counts II and III of the Complaint because they are contrary to law and therefore immaterial and impertinent. (*Id.* at 4.)

### A. Count I – Bad Faith

Under 42 Pa. C.S.A. § 8371, plaintiffs may recover interest, punitive damages, court costs, and attorney's fees if an insurer acts in bad faith in evaluating or handling a claim. *Davis v. Nationwide Mut. Ins. Co*., 228 F. Supp. 3d 386, 388 (E.D. Pa. 2017). Pennsylvania law governs here and has defined "bad faith" in the insurance context to mean:

> any frivolous or unfounded refusal to pay proceeds of a policy. For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.

*Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, 646 F. Supp. 3d 610, 620-21 (E.D. Pa. 2022) (quoting *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005) (internal

citation omitted)). "'Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured.'" *Id.* (quoting *Rhodes v. USAA Cas. Ins. Co.*, 2011 PA Super 105, 21 A.3d 1253, 1261 (Pa. Super. 2011) (internal citation omitted)).

To succeed on a bad faith claim, the plaintiff must prove the existence of two elements: (1) "that the defendant did not have a reasonable basis for denying benefits under the policy" and (2) "that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Solano-Sanchez*, 646 F. Supp 3d at 621 (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, A.2d 680, 688 (Pa. Super. 1994)). The plaintiff has the burden of proving both elements of a bad faith claim by clear and convincing evidence. *Id.* (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)).

In its MTD, Defendant argues that the bad faith claim (Count I) should be dismissed because Plaintiffs merely disagreed with LM's valuation of the claim and that "a disagreement between an insurer and insured, as to the overall value of the claim is not bad faith." (ECF No. 15 at 1.) However, the Court finds Defendant either selectively ignores or misrepresents the Risks' allegations. Plaintiffs asserted in support of their bad faith Claim two primary allegations: (1) LM's investigation was improper and (2) LM failed to engage in good faith settlement negotiations. (ECF No. 1-3 at ¶¶ 14-47.) The Court will take each argument in turn.

First, regarding the allegations of improper investigation of the UIM claim, Plaintiffs allege specifically that Defendant failed to conduct a pre-litigation IME or to take Ms. Risk's statement under oath. (ECF No. 14 at 24-25.) Although bad faith in the insurance context is usually related to the unreasonable and reckless refusal to pay out benefits, it "need not be limited to the literal act of denying a claim." *Solano-Sanchez*, 646 F. Supp. 3d at 622 (quoting *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)). Bad faith can also encompass conduct

during investigations and litigation, if such conduct contributes to the "unreasonable and intentional (or reckless) denial of benefits." *Id*. Conduct such as undertaking a "lack of good faith investigation into fact[s], and failure to communicate with the claimant" can be sufficient for a finding of bad faith. *Id.* (quoting *Romano v. Nationwide*, 646 A.2d 1228, 1233 (Pa. Super. 1994)). An insurer has an obligation to conduct a good faith investigation of an insured's claim. *Id.* (quoting *Baum v. Metro. Prop. & Cas. Ins. Co*., 2019 U.S. Dist. LEXIS 164736, 2019 WL 4689024, at *5 (W.D. Pa. 2019) ("The insurance company must conduct a meaningful investigation, which may include an in-person interview, examination under oath, medical authorizations, and/or medical examinations.")) (internal citation omitted).

In support of its argument, Defendant points to various cases. However, those cases are factually dissimilar to this one. (*See* ECF No. 13-1 at 9-10.) For instance, Defendant cites to *Cooper v. Liberty Mut. Gen. Ins. Co*., in support of its assertion that a disagreement about the value of the claim is insufficient to establish bad faith. No. 22-618, 2022 U.S. Dist. LEXIS 69419, at *11-12 (E.D. Pa. Apr. 14, 2022). However, in *Cooper*, there were:

> no factual allegations as to when Plaintiffs submitted a claim for benefits under the Policy; what information they submitted to support their request for the UIM Policy limits; the amount that LM General offered to settle Plaintiffs' claims, if any; or the reasons the LM General offered for failing to settle or to offer the Policy limits.

*Id.* The *Cooper* court dismissed the plaintiff's statutory bad faith claim on the basis that the conclusory allegations were insufficient. *Id.* However, unlike in *Cooper*, the Risks have pled all of the above-noted facts, including the exact date they submitted their UIM claim; the specific medical records included in support of their claim; the fact that LM failed to provide any settlement offer; and the fact that LM offered no rationale for its value assessment. (ECF No. 1-3 at ¶¶ 14-47.) The other cases Defendant cites in support of its argument are similarly distinguishable from the instant case. *Compare* (ECF No. 1-3 (LM failed to obtain Ms. Risk's statement under oath)),

*with Diaz v. Progressive Advanced Ins. Co.*, No. 5:19-cv-06052-JDW, 2020 U.S. Dist. LEXIS 29708, at *4 (E.D. Pa. Feb. 21, 2020) (involving a stolen vehicle, not a UIM claim, in which defendant insurance company took plaintiff's statement under oath before issuing its decision); *compare also* (ECF No. 1-3 (Complaint includes specific facts regarding LM's inadequate communications with Plaintiffs, failure to investigate, and failure to make any settlement offer)), *with Kosmalski v. Progressive Preferred Insurance*, WL 2045827, at *2 (E.D. Pa. 2018) (noting that complaint lacked facts regarding plaintiff's "insurance claim and the accompanying investigation, negotiations, or communications in support of the contention" of bad faith).

Rather, *Baum v. Metropolitan Property and Casualty Co.* is more factually similar to the Risks' case. No. 2:16-CV-623, 2019 U.S. Dist. LEXIS 164736 (W.D. Pa. 2019). In *Baum*, as here, the claims adjuster failed to obtain a statement under oath or to arrange for an IME of the plaintiff during the investigation. *Baum* at *11-12. In denying the motion for summary judgment, the *Baum* court found "the insurance company must conduct a meaningful investigation, which may include an in-person interview, examination under oath, medical authorizations, and/or independent medical examinations." *Id* at *12. Further, an IME may be "particularly insightful" where plaintiff suffers from complex medical conditions. *Id.* at *5. Here, Ms. Risk suffered "a traumatic brain injury, post concussion syndrome and de Quervain tenoynosvitis of her left wrist requiring surgical procedures in the form of a left de Quervain first dorsal compartment release with exterior tenosynovectomy of abductor pollicis longus and extensor pollicis brevis tendons," and continues to experience ongoing symptoms such that an IME may have yielded information that would have been particularly informative. (ECF No. 14 at 40; ECF No. 1-3 at ¶ 11.) LM's investigation of this claim was limited to reviewing the medical records Ms. Risk herself provided, and yet, without gathering any additional information, and without explaining the basis for it, Ms.

Helfer reached a claim value that substantially differed from those reached by the doctors who examined Ms. Helfer. While Defendant is correct that there is no "contractual obligation or statutory provision requiring" an IME or taking plaintiffs' statement under oath, failing to do either one and also failing to explain the basis for the denial both weigh in favor of a finding, under the first prong, that LM lacked a reasonable basis for denying benefits under the policy if borne out in discovery. Further, because Ms. Helfer reviewed the voluminous materials submitted by plaintiff, she had knowledge of how the medical expert explained and evaluated the claim, therefore supporting a possible a finding that LM may have knowingly or recklessly disregarded the lack of reasonable basis for denying the claim.

Second, the Risks argue that LM's assessment of the claim value was unreasonably low. Pennsylvania Courts do not recognize "bad faith where the insurer makes a low but reasonable estimate of the insured's losses, or where the insurer made a reasonable legal conclusion based on an area of the law that is uncertain or in flux." *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004). However, "an unreasonably low offer, or no offer, could be bad faith" on the part of the insurance company. *Davis*, 228 F. Supp. 3d at 389-90. Courts should "examine the factors that the insurer relied on in evaluating a claim to determine whether the insurer had a reasonable basis for denying benefits." *Id.* at 388. Here, however, where LM provided the Risks with no rationale or explanation for its decision, it is impossible to examine the factors that the insurer relied upon, let alone confirm that the insurer actually performed a valid evaluation.

*Davis* is informative. The *Davis* court denied the insurance company's motion to dismiss where the UIM claim plaintiff's medical damages exceeded $300,000 and the insurance company offered either $7,500 or no settlement at all, finding that the defendant "failed to make a reasonable settlement offer in light of the insured's injuries and the facts underlying the insured's claim." *Id.*

at 389-90. Like the insurance company in *Davis*, here too LM has failed to make any settlement offer to the Risks, despite the projected future unpaid medical costs exceeding the policy limit of $250,000. LM argues that the Risks make boilerplate legal conclusions in the Complaint and that the basis of the Complaint simply asserts a difference of opinion as to the value of the claim. (ECF No. 13 at 10.) The Court disagrees. Ms. Risk's injuries and medical treatments are well documented, as are her alleged predicted future medical costs. (ECF No. 1-3 at ¶14). "Assuming the truth of these allegations, an unreasonably low offer, or no offer, could be bad faith" on the part of LM. *See Davis*, 228 F. Supp. 3d at 389-90.

Further, LM's perspective on the sufficiency of Ms. Risk's pleading is "much more strict than the actual pleading standard set forth in Federal Rule of Civil Procedure 8, which merely requires a 'short and plain statement of the claim.'" *Id.* Contrary to LM's position, bad faith claims have survived motions to dismiss when premised on allegations that an insurer "failed to make a reasonable settlement offer in light of the insured's injuries and the facts underlying the insured's claim." *Id.*

Accordingly, construing the well-pled allegations in the light most favorable to the Plaintiffs, and drawing all inferences in the Plaintiffs' favor, the Court denies LM's MTD as to the Bad faith claim (Count I).

**B. COUNT IV - PENNSYLVANIA UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW ("UTPCPL")**

LM moves to dismiss the Risks' UTPCPL claim (Count IV), arguing that it deals exclusively with claims processing conduct, which is not actionable under the UTPCPL. As a general matter, the UTCPCL prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. § 201-3(a). To state a facially plausible claim under the UTPCPL, a complaint must allege that:

> 1) [the plaintiff] purchased or leased goods or services primarily for a personal, family, or household purpose;
> 2) [the plaintiff] suffered an ascertainable loss of money or property; and
> 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL.

*Cooper*, No. 22-618, 2022 U.S. Dist. LEXIS 69419, at *12-13. "The complaint must also allege that the plaintiff justifiably relied on the deceptive conduct." *Id.* (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221-22 (3d Cir. 2008)). Importantly, however, "[t]he UTPCPL applies to consumer transactions, which are statutorily defined[, and] the handling of an insurance claim does not meet the statutory definition." *Id.* (quoting *Wenk v. State Farm Fire & Cas. Co.*, 2020 PA Super 26, 228 A.3d 540, 551 (Pa. Super. Ct. 2020) (citation omitted)).

As the Pennsylvania Superior Court has stated, "'[t]he UTPCPL applies to the sale of an insurance policy, it does not apply to the handling of insurance claims.'" *Id.* (quoting *Wenk*, 228 A.3d at 550 (citation omitted)). Rather, the bad faith statute, 42 Pa. Cons. Stat. § 8371, "'provides the exclusive statutory remedy applicable to claims handling.'" *Id.* (quoting *Wenk*, 228 A.3d at 550 (quotation omitted)). Here, the allegations in Count IV of the Complaint relate to LM's handling of the Risk's UIM claim, not to the sale of the Policy. (ECF No. 1-3 at ¶ 67.)

In this case, the Risks allege that Defendants violated the UTPCPL by engaging in advertising and selling underinsured motorist coverage to customers, such as the Plaintiffs, with no intent to honor the benefits advertised. (ECF No. 1-3 at ¶¶ 54-77.) This framing essentially repackages the Risk's bad faith claim as a UTPCPL claim, such that it ultimately arises from the same issue: Ms. Helfer's alleged mishandling of the insurance claim. (*See* ECF No. 1-3 at ¶ 75 (alleging under Count IV that "Plaintiff has yet to receive a penny of the full policy limits due to her ($250,000) under her insurance policy . . . . because of Liberty Mutual's unfair trade practices and deceptive conduct.").) Accordingly, the Court finds that Plaintiffs' UTPCPL claim does not

state a claim upon which relief can be granted; LM's MTD is granted insofar as it seeks dismissal of the Risks' UTPCPL claim in Count IV.

**C. MOTION TO STRIKE**

Defendant moves to strike Paragraphs 20-47, and Paragraphs 49-50 from Counts II (breach of contract)[2] and III (loss of consortium) of the Complaint, with prejudice, arguing that they are extracontractual and contain certain impertinent or prejudicial matters. While Defendant points the Court to cases wherein the Court struck allegations that an insurance company has a fiduciary duty to its insured, Defendant fails to cite to any applicable case law in support of its request to strike other "extra-contractual claims and demands." (ECF No. 13-1 at 15.) Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Relief under FRCP 12(f) will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Houtz v. Paxos Rests.*, No. 5:23-cv-00844-JMG, 2024 U.S. Dist. LEXIS 31955, at *7 (E.D. Pa. Feb. 26, 2024) (citing *Goode v. LexisNexis Risk & Information Analytics Group*, *Inc.*, 284 F.R.D. 238, 243 (E.D. Pa. 2012)). Although "this relief is generally disfavored, that decision is vested in the trial [judge's] sound discretion." *Id.*, No. 5:23-cv-00844-JMG, 2024 U.S. Dist. LEXIS 31955, at *7.

First, federal district courts have held that, under Pennsylvania law, an insurer does not assume a fiduciary duty toward an insured for UIM claims. *Pommells v. State Farm Ins.*, No. 18-5143, 2019 U.S. Dist. LEXIS 92435, at *10 (E.D. Pa. June 3, 2019) (citing cases). Counts II and III of the Complaint incorporate an allegation that LM violated its fiduciary duty to the plaintiffs.

---

[2] LM concedes that the Risks have set forth a "facially plausible contract claim for underinsured motorist benefits." (ECF 13-1 at 10.)

(ECF No. 1-3 at ¶¶ 37(m), 48, 51.) As such, Plaintiffs' references to a "fiduciary duty" are hereby stricken *as incorporated into Counts II and III*.

Second, "[a] demand for damages that is not recoverable as a matter of law may be stricken pursuant to Rule 12(f)." *Kirschner v. State Farm Fire & Cas. Co.*, No. 23-993, 2023 U.S. Dist. LEXIS 194754, at *4 (E.D. Pa. Oct. 31, 2023). Pennsylvania law does not allow awards for attorney's fees in suits for ordinary breach of contract claims "'unless there is express statutory authorization, a clear agreement of the parties[,] or some other established exception.'" *Id.* (citing *McMullen v. Kutz*, 603 Pa. 602, 985 A.2d 769, 775 (Pa. 2009)). "Where a court can determine from the face of the complaint that a plaintiff cannot recover attorneys' fees, such a request may be stricken." *Id.* (citing *Berger v. Hahnemann Univ. Hosp*., No. 17-cv-2295, 2017 U.S. Dist. LEXIS 190995, 2017 WL 5570340, at *9 (E.D. Pa. Nov. 17, 2017), aff'd, 765 F. App'x 699 (3d Cir. 2019); *Craker v. State Farm Mut. Auto. Ins. Co*., No. 11-cv-225, 2011 U.S. Dist. LEXIS 47342, 2011 WL 1671634, at *5 (W.D. Pa. May 3, 2011)). As such, the allegations relating specifically to recovery of attorney's fees made in Paragraphs 47 and 50 of the Complaint are stricken *solely as incorporated into Count II* of the Complaint. (ECF No. 1-3 ¶¶ 47, 50). All other allegations remain because at this stage of the litigation such allegations are not irrelevant, immaterial, impertinent, or scandalous.

## V. CONCLUSION

For the foregoing reasons, LM's Motion to Dismiss (ECF No. 13) is Denied as to Count I and Granted as to Count IV. LM's Motion to Strike certain allegations contained in Counts II and III is Granted regarding references to a fiduciary duty incorporated in Counts II and III, and regarding references to attorney's fees made in paragraphs 47 and 50 of the Complaint incorporated into Count II of the Complaint, and is otherwise Denied. The Plaintiffs' Motion to

Compel (ECF No. 16) is Denied as Moot and dismissed without prejudice with the right for Plaintiffs to refile, taking into consideration the Court's decision on Defendant's Motion to Dismiss. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**